COMMONWEALTH *vs.* SHAUN D. ELLSWORTH.

No. 95-P-1552.

Berkshire. September 16, 1996. - October 31, 1996.

Present: SMITH, PORADA, & GREENBERG, JJ.

*Search and Seizure,* Automobile, Threshold police inquiry, Consent.

A police officer's initial stop and threshold inquiry of the operator of a mo-
tor vehicle that was being driven in an erratic fashion were proper,
however, when the driver produced a valid license and registration and
the officer concluded that she had committed no traffic offense, there
was no reason in the circumstances to further detain and interrogate the
vehicle's other occupants or to conduct a search of the vehicle; further,
the owner's consent to a search was tainted by the illegal detention and
interrogation: all controlled substances seized thereafter in the vehicle or
on the persons of the occupants should have been suppressed. [556-558]

INDICTMENTS found and returned in the Superior Court
Department on August 18, 1994.

A pretrial motion to suppress evidence was heard by
*Richard F. Connon,* J.

Applications for interlocutory appeal were allowed by *John
M. Greaney,* J., in the Supreme Judicial Court for the county
of Suffolk, and the appeals were consolidated and reported by
him to the Appeals Court.

*Eric Neyman,* Assistant District Attorney, for the Com-
monwealth.

*Robert J. Carnes* for the defendant.

PORADA, J. This is a joint interlocutory appeal by the Com-
monwealth and the defendant from a Superior Court judge's
rulings on the defendant's motion to suppress as evidence
drugs seized in the search of an automobile occupied by him
as a passenger. The judge did not make detailed findings of
fact, but ruled from the bench at the conclusion of the sup-
pression hearing that the initial search of the car after a justi-

fiable stop for a traffic violation was valid because it was consensual and that the subsequent search of the car at the police station was not valid because, in the circumstances of the case, it was a search for evidence and not an inventory search. We conclude that the motion to suppress should have been allowed in its entirety because all the drugs that were seized were "the fruit of the poisonous tree" of an illegal detention of the occupants following the completion of a justifiable threshold inquiry. See *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978); *Commonwealth* v. *Loughlin*, 385 Mass. 60, 63 (1982).

We summarize the judge's brief findings supplemented by the uncontroverted evidence presented at the motion hearing. At approximately 1:30 A.M. Officer Garner of the Williamstown police department stopped a vehicle because he observed it being operated in an erratic manner. Before he exited his marked police cruiser, he observed that there were five people in the car, three in the front seat and two in the rear. One of the rear seat passengers appeared to be bending forward as if to place an object under the seat in front of him. Fearing that the passenger may have placed a gun under the seat, Officer Garner called for a backup. Before another police officer arrived on the scene, Officer Garner approached the driver's side of the car and, keeping an eye on the passengers in the car, asked the driver for her license and registration. At that time, the officer detected an odor of alcohol coming from the car. The driver produced her license and a passenger in the front seat, who was the owner of the car, produced the registration. After inquiring of the operator if she had been drinking, which she denied, the officer asked the operator to step out of the car and to follow him back to his cruiser. At that time another officer had arrived on the scene. Officer Garner told him to keep an eye on the passengers. That officer did not, however, approach the car. After speaking to the operator for two or three minutes, Officer Garner concluded that she was sober and allowed her to return to the car. At that point, he testified that his investigation regarding any moving violation was over,[1] but that he was still concerned that the rear seat passenger might have been concealing a gun because of his movements in the car. Because

---

[1] The officer at this juncture had also apparently concluded that the license and registration were valid.

of that concern, Officer Garner, accompanied by the other officer, returned to the car and asked both the owner of the car and that passenger to step out of the car. As the passenger left the car, Officer Garner noticed "green plant like material" on the passenger's shirt which appeared to be marijuana. The passenger started to brush the material off his shirt but Officer Garner stopped him. The passenger did not appear to be armed. Officer Garner then turned to the owner of the car and asked him if he had any weapons or drugs on him or in the car. The owner denied that he had. The officer then asked him if "he had a problem with" the police looking "through his car for any weapon or drugs." The owner said that he had no problem because he had nothing to hide. The police then ordered everyone out of the car and proceeded to search the car. Under the floor mat in front of the seat occupied by the passenger who had made the furtive movement, Officer Garner found seven bags of marijuana. The officers then placed the owner and the four passengers under arrest and had the car towed to the police station. At the police station, the car was again searched. No additional drugs were found at that time. The five occupants of the car were also searched. In searching one of the passengers, Peterson, the police found five bundles of rock crack cocaine in his sock. When the cocaine was discovered, Peterson told Officer Garner that there was more cocaine to be found and that it was either on the person of the defendant Ellsworth or in the car. The police then, without a warrant, searched the car once again at the station and discovered crack cocaine on the floor behind the driver's seat in front of where the defendant had been sitting. Although Officer Garner testified that the Williamstown police department has a written inventory policy, the contents of the policy were not placed in evidence at the suppression hearing.

There is no dispute that the initial stop and threshold inquiry were proper in this case. There is also no question that Officer Garner would have been justified, when his concern for his safety was aroused by what he saw as the furtive movement of the rear seat passenger, in taking steps to protect his safety during the stop by ordering the occupants out of the car. *Commonwealth* v. *Ferrara*, 376 Mass. at 505. However, once Officer Garner had concluded his inquiry of the operator and determined that she had a valid license and registra-

tion and had not committed any traffic offense, his exit orders could not be justified by the initial furtive movement of the passenger. See *Commonwealth* v. *Santana*, 420 Mass. 205, 213-214 n.8 (1995). At that time, there was no longer any reason to detain the occupants of the vehicle or to take any protective precautions for his safety. *Commonwealth* v. *King*, 389 Mass. 233, 244 (1983). *Commonwealth* v. *Loughlin*, 385 Mass. at 62 & n.3. A justifiable threshold inquiry permits limited restraint of the individuals involved as long as their detention is commensurate with the purpose of the stop. *Florida* v. *Royer*, 460 U.S. 491, 500 (1983). *Commonwealth* v. *Borges*, 395 Mass. 788, 794 (1985). Here, the continued detention and interrogation of the occupants of the car was no longer necessary to effectuate the purpose of the stop and was therefore illegal. *Commonwealth* v. *Bartlett, ante* 468, 470-472 (1996).

Although the judge found that the search was valid because the owner of the car consented to the search,[2] we do not conclude that his act of consent was one of free will, unaffected by the taint of the illegality of the detention. The owner's consent was obtained immediately following the illegal detention and illegal interrogation. In addition, although the officer testified that he informed the owner that his consent was voluntary, he did not expressly tell him that he could refuse to consent or that they had already discovered marijuana plant seeds on his fellow passenger justifying a search of the car without his consent. In these circumstances, we are of the opinion that the owner's verbal assent to the search did not attenuate the illegality of the search. See *Commonwealth* v. *Loughlin*, 385 Mass. at 63-64.

Because all of the drugs that were seized were traceable to the illegal detention of the occupants of the car and the subsequent search of the car, this evidence must be suppressed as the "fruit of the poisonous tree." *Commonwealth* v. *Ferrara*, 376 Mass. at 505. *Commonwealth* v. *Loughlin*, 385 Mass. at 63. Accordingly, the motion to suppress should be allowed in its entirety. The order denying the motion to suppress in

---

[2]The judge made no findings pertaining to the legality of the continued detention and interrogation of the occupants of the car after Officer Garner had determined that the operator had committed no "moving" violation.

part is reversed, and the order allowing the motion to suppress in part is affirmed.

*So ordered.*